# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KAREN BARTH,                          )
                                      )    **No. 13 CV 7788**
                   **Plaintiff,**   )
                                        )
    **v.**   )    **Magistrate Judge Young B. Kim**
                                        )
**CAROLYN W. COLVIN, Acting**   )
**Commissioner, Social Security**   )
**Administration,**   )
                                        )    **November 16, 2015**
                      **Defendant.**   )

## MEMORANDUM OPINION and ORDER

Karen Barth applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") based on her claim that chronic obstructive pulmonary disease ("COPD"), asthma, and carpal tunnel syndrome have left her unable to work. After an administrative law judge ("ALJ") denied her applications and the Appeals Council declined her request for review, Barth filed the current lawsuit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross motions for summary judgment. For the following reasons, Barth's motion is granted, the Commissioner's is denied, and the case is remanded for further proceedings consistent with this opinion:

## Procedural History

Barth applied for DIB and SSI in April 2011, claiming a disability onset date of October 14, 2010. (Administrative Record ("A.R.") 173-85.) After her claims were denied initially and upon reconsideration, (id. at 92-95), Barth requested and was

granted a hearing before an ALJ. That hearing took place on June 12, 2012. (Id. at 35-73.) On June 20, 2012, the assigned ALJ denied Barth's application. (Id. at 30.) Barth submitted additional records to the Appeals Council in support of her request for review, but it determined that the new information "does not provide a basis for changing the [ALJ]'s decision" and denied her review request. (Id. at 5-6.) Because the Appeals Council declined review, the ALJ's decision represents the final decision of the Commissioner of Social Security Administration. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Barth filed this lawsuit seeking judicial review, *see* 42 U.S.C. § 405(g), and the parties have consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 7).

## Facts

From 1994 until 2010, Barth worked as a dental hygienist in a dental office located in Oak Brook, Illinois. (A.R. 231, 338.) According to Barth, over the years she developed health problems that interfered with her ability to perform her job, among them shaky hands associated with carpal tunnel syndrome. (Id. at 41-42.) Barth's employer terminated her on October 14, 2010, when she was 57 years old. (Id. at 41-42, 263.) Barth claims that by the spring of 2011 her carpal tunnel syndrome had progressed to the point that she could no longer work. (Id. at 44-45.) At her hearing before the ALJ, Barth presented both documentary and testimonial evidence in support of her claims.

**A.      Medical Evidence**

Beginning in 2006 Barth received treatment for allergies and asthma from the Marcotte Medical Group.  (A.R. 419-37.)  She also received treatment for unspecified pain in her joints.  (Id. at 417.)  In the summer of 2010, Dr. Christine Marcotte assessed Barth as having COPD with hyperlipidemia.  (Id. at 344.)  She prescribed a number of medications for these conditions and for Barth's joint pain, including Advair, Paxil, Xanax, and Naproxen.  (Id. at 346.)  The following year Dr. Marcotte saw Barth for a checkup and noted that she had normal air flow and no rales, rhonchi, or wheezes.  (Id. at 371.)  She refilled Barth's prescriptions after again assessing her as having COPD and hyperlipidemia, along with low back pain and unspecified joint pain.  (Id. at 371-72.)

After Barth applied for DIB and SSI she submitted to a psychological consultative examination with clinical psychologist William Hilger, Ph.D., in May 2011.  (Id. at 351.)  Dr. Hilger noted that Barth had never received psychiatric treatment but that her family doctor prescribed her Xanax for anxiety and Paxil to moderate her mood.  (Id.)  Barth reported that she struggles with depression and has difficulty getting out of bed in the morning.  (Id. at 352.)  She described the death of her adult son and cried as she discussed her loss.  (Id.)  Dr. Hilger performed tests designed to measure things like Barth's general knowledge, abstract reasoning, and judgment, with the results measuring from "adequate" to "fair."  (Id. at 352-53.)  He diagnosed Barth as having "[a]djustment reaction of adulthood with depression," but concluded that she "has adequate mental potential,

depending especially on her physical condition, to perform work related activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation." (Id. at 353-54.)

The following month Barth underwent a physical examination with consulting physician Dr. Seth Osafo. (Id. at 358.) Barth reported to Dr. Osafo that she had experienced symptoms of carpal tunnel syndrome for five years and that she was unable to work because her difficulty breathing requires her to take a lot of breaks. (Id. at 358-59.) Dr. Osafo examined Barth and noted no wheezing, rhonchi, or rales. (Id. at 360.) He observed no tenderness, swelling, redness, or warmth in her hands, but noted a full range of motion in her wrists, and recorded negative Tinel's and Phalen's signs. (Id.) Based on that examination, Dr. Osafo described Barth as having asthma, low back and joint pain, and carpal tunnel syndrome, but assessed those conditions as being "clinically stable." (Id. at 361.) Dr. Osafo further opined that Barth is able to sit, stand, walk, carry, handle objects, hear, and speak without any limitations. (Id.)

## B. Barth's Hearing Testimony

When Barth appeared at her June 2012 hearing before an ALJ she was unaccompanied by an attorney or other representative. The ALJ explained to Barth that she had a right to representation and asked whether she would like to postpone the hearing to obtain a representative. (A.R. 38-39.) Barth asserted that she wanted to proceed without a representative and signed a waiver of

representation form. (Id. at 40.) The ALJ then questioned Barth about her work history, her symptoms, and how her medical issues impact her daily life.

Barth testified that she lost her job as a dental hygienist in October 2010, after which she received unemployment benefits for a short time while she looked for other dental hygiene jobs. (Id. at 43.) Barth testified that no one wanted to hire her because of her shaky hands, noting that "I'm viewed as a malpractice lawsuit waiting to happen." (Id. at 41-42.) She said that by April 2011 her fine motor skills were so deteriorated by carpal tunnel syndrome that she was no longer able to work. (Id. at 44-45.) Barth testified that she never had electrical tests to diagnose carpal tunnel syndrome, but that her Naproxen prescription for joint pain helps with those symptoms. (Id. at 57-58.) She said that she wears wrist braces at night and when she drives, but she is "sometimes" able to open a jar and has no difficulty with buttons or picking coins up from a table. (Id. at 56-57.)

In describing how her asthma and COPD impact her life, Barth testified that she has a nebulizer at home and gives herself treatments up to three to four times a day, although sometimes she needs them only once a day. (Id. at 46-47.) She also uses an asthma inhaler pump two to three times a day. (Id. at 47.) Barth explained that when her asthma gets bad, which happens a couple of times a week in the spring and fall but only once a month in the summer, she has to walk slowly and rest. (Id. at 48.) She also said that with respect to her former work as a dental hygienist, "I used to have to be very careful with when I would be changing the solutions with the developer [inaudible], I would . . . start wheezing." (Id. at 64.)

Barth also described having pain and experiencing depression. She said that she has a lot of lower back, hip, and knee pain which she treats with Naproxen. (Id. at 49.) She said the pain typically lets up about an hour after she takes her medicine, but on damp days her pain persists all day. (Id.) Because of her pain Barth testified that she can walk her dog for only a couple of blocks and has to stop and rest while doing housework. (Id. at 52.) Barth said that she takes Paxil and Xanax for depression and panic attacks, and although the medicine helps she still has occasional panic attacks. (Id. at 53.) She testified that even when she is taking depression medicine she always feels tired and sleeps a lot, never waking up feeling refreshed. (Id. at 54.)

## C. Vocational Expert's Testimony

Vocational Expert ("VE") Edward Stefan also testified at Barth's hearing, describing her past relevant work and providing evidence with respect to what kind of work a hypothetical individual with certain functional limitations could perform. The VE described Barth's past work as that of a "dental assistant," at which point Barth interrupted to say that she was a dental hygienist. (A.R. 59.) The ALJ told Barth not to interrupt and the VE said that what matters is the description found in the Dictionary of Occupational Titles ("DOT"), not what her employer called the job. (Id. at 59-60.) The ALJ then asked the VE whether a hypothetical individual could perform the job of dental assistant if she had the following residual functional capacity ("RFC"): the ability to lift or carry 10 pounds; sit, stand, or walk six hours in an eight-hour day; only occasionally stoop, crouch, or climb ramps, stairs,

ladders, ropes, or scaffolds; could never reach above shoulder level; who should avoid concentrated exposure to wetness and humidity, have no more than occasional exposure to extreme cold, and be shielded from exposure to pulmonary irritants; and should not work in small, enclosed places. (Id. at 60.) The VE testified that a person with that RFC could work as a dental assistant as that job is performed in the general economy. (Id.) The ALJ then asked whether a hypothetical individual with that RFC could work as a dental assistant if she could engage in handling only occasionally. (Id. at 63.) The VE testified that the dental assistant position requires frequent to constant handling as it is performed in the general economy. (Id.) The VE said that the DOT only lists occasional handling with respect to the dental assistant job, but testified based on his experience that the DOT is incorrect in that regard. (Id.) The VE did clarify that his testimony was otherwise consistent with the DOT. (Id. at 67.)

## D.    ALJ's and Appeals Council's Decisions

On June 20, 2012, the ALJ issued a decision finding that Barth is not entitled to SSI or DIB. (A.R. 30.) In applying the standard five-step sequence for assessing disability, *see* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Stepp v. Colvin*, 795 F.3d 711, 716 (7th Cir. 2015), the ALJ found at step one that Barth has not engaged in any substantial gainful activity since her alleged disability onset date, (id. at 24). At step two the ALJ found that Barth has severe impairments in the form of COPD, obesity, and asthma. (Id. at 24.) The ALJ discussed Barth's allegation of carpal tunnel syndrome at step two, but she found "no evidence of an actual prior

diagnosis," testing, or treatment related to that impairment. (Id. at 25.) Because the consulting examiner saw no evidence of a reduced range of motion in her wrists or reduced grip strength, the ALJ concluded that this condition "is a non-medically determinable impairment." (Id.) At step three the ALJ found that none of Barth's impairments are of listings-level severity, either individually or in combination. (Id. at 26.) Before turning to step four, the ALJ determined that Barth has the RFC to perform light work, except that: she could lift or carry no more than 10 pounds frequently; sit, stand, or walk no more than six hours in an eight-hour day; and no more than occasionally stoop, crouch, or climb ramps, stairs, ladders, ropes, or scaffolds. (Id. at 27.) The ALJ further determined that Barth should never be required to reach above shoulder level and should avoid concentrated exposure to wetness and humidity, have no more than occasional exposure to extreme cold, be shielded from exposure to pulmonary irritants, and should not work in small, enclosed places. (Id.) Turning to step four, the ALJ concluded that Barth can return to her past relevant work as a "dental assistant." (Id. at 29.) Accordingly, the ALJ concluded that Barth is not disabled and denied her applications for DIB and SSI. (Id. at 30.)

Barth subsequently retained an attorney who filed a brief before the Appeals Council. (Id. at 17.) He also submitted to the Appeals Council additional medical records that had not been presented to the ALJ. (Id. at 371-444.) Those records include progress notes prepared by Dr. Sital Bhargava in October 2010, noting that Barth had bilateral wrist pain and stiffness, as well as tingling and numbness in

her fingers.  (Id. at 373.)  Dr. Bhargava examined Barth and recorded a positive Phalen's sign as well as decreased range of motion in her wrists.  (Id.)  He recommended that Barth continue to wear wrist splints, which she told him she had been wearing for the previous two months.  (Id. at 374, 444.)  In denying Barth's request for review of the ALJ's decision, the Appeals Council wrote that it had reviewed the additional records and "considered whether the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence of record."  (Id. at 6.) The Appeals Council concluded that the new information did not "provide a basis for changing" the ALJ's decision.  (Id.)

## Analysis

Barth argues that the ALJ's finding that she can return to her past work lacks the support of substantial evidence because, she says, it is based on a hypothetical question posed to the VE that did not account for all of her limitations and because the ALJ failed to resolve what Barth characterizes as an apparent conflict between the DOT and the VE's testimony.  Barth also argues that the Appeals Council erred by finding that the additional medical records she submitted for its review are not material.

This court reviews the ALJ's decision only to ensure that it is supported by substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp*, 795 F.3d at 718 (internal quotation omitted).  Under that standard, the court will not substitute its judgment for the ALJ's, reconsider evidence, or reweigh the claimant's credibility.  *Elder v.*

*Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). At the same time, the court will not "simply rubber-stamp the Commissioner's decision without a critical review of the evidence" and will ensure that the ALJ built a "logical bridge from the evidence" to the conclusion. *Minnick*, 775 F.3d at 935 (internal quotations and citations omitted).

## A.    The ALJ's Step-Four Finding

Barth first argues that the ALJ committed reversible error in finding that she can return to her past work because the finding is based on what she characterizes as an incomplete hypothetical posed to the VE. (R. 12, Pl.'s Mem. at 6.) Specifically, Barth faults the ALJ for failing to include in the hypothetical the need to take frequent breaks at work. She argues that the ALJ did not include that limitation "despite finding Barth's allegations credible." (Id.) But the ALJ specifically did *not* find Barth's allegations credible. Instead, the ALJ explained that she had "not accommodated all of the claimant's alleged symptoms and limitations" in the RFC assessment because she excluded those limitations that she found to be less than credible. (A.R. 28.) An ALJ is required to include in the hypothetical questions posed to the VE and in the RFC only those limitations that she finds credible. *Schmidt v. Astrue*, 496 F.3d 833, 845-46 (7th Cir. 2007); *see also Kasberger v. Astrue*, No. 06-3868, 2007 WL 1849450, at *3 (7th Cir. June 27, 2007) (noting that the ALJ need not include in RFC "difficulties with attending work regularly and punctually" where the evidence supporting that limitation is thin). The ALJ is entitled to rely on the VE's testimony as long as it reflects the list of

impairments that the ALJ finds supported by the record. *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002). Here, the only evidence Barth cites in support of the limitation is her hearing testimony and a physician's notes describing her self-report that she takes frequent breaks at work. (R. 12, Pl.'s Mem. at 6.) But because the ALJ disbelieved her description of this limitation and because she has not challenged that credibility assessment, this court finds no error in the ALJ's decision not to include the need for frequent breaks in her RFC or in the hypothetical posed to the VE. *See Schmidt*, 496 F.3d at 845-46.

Next Barth argues that the ALJ erroneously failed to resolve an apparent conflict between the VE's testimony and the DOT. (R. 12, Pl.'s Mem. at 7-9.) According to Barth, the VE's testimony that a person limited to work without exposure to pulmonary irritants could perform the dental assistant job is inconsistent with the DOT's description of that job, which includes among the dental assistant's tasks sterilizing and disinfecting equipment and exposing x-rays. *See* Dep't of Labor, DOT § 079.361-018. Barth asserts that performing those tasks would necessarily expose her to pulmonary irritants. (R. 12, Pl.'s Mem. at 7.) The only support she provides for that assertion is her testimony that, "I used to have to be very careful with when I would be changing the solutions with the developer [inaudible], I would . . . start wheezing." (A.R. 64.) Barth argues that this testimony should have placed the ALJ on notice of a conflict between the hypothetical and the DOT. She further points out that these purported errors are significant because if the ALJ had concluded that she could not return to her past

relevant work, then given her age, education, and lack of transferable skills, she would have been entitled to a finding of disability under the Medical-Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.06.

Barth is correct that an ALJ is required to "investigate and resolve any apparent conflict between the VE's testimony and the DOT." *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The relevant Social Security Ruling makes clear that part of the ALJ's obligation to develop the record includes the duty to ask the VE whether his testimony is consistent with the DOT, and if it is not, then to resolve the conflict. SSR 00-4p, 2000 WL 1898704, at *2. Here, the ALJ specifically asked the VE whether his testimony was consistent with the DOT, and the VE testified that it was, except for the fact that in his opinion the dental assistant job requires more than occasional handling.[1] (A.R. 67.) Although Barth argued at that point that her job title was dental hygienist instead of dental assistant, she did not argue that her exposure to x-ray developing solutions or sanitizers on the job is inconsistent with the RFC precluding exposure to pulmonary irritants. (Id. at 68.) Because the ALJ asked the VE about the consistency of his testimony with the DOT and his answer went unchallenged, the ALJ was entitled to rely on the VE's testimony unless the conflict, as Barth now identifies, qualifies as an "apparent conflict." *See Overman v.*

---

[1] Although neither party points this out, it appears that the VE was mistaken about the frequency of handling involved in the dental assistant position. The DOT entry for "dental assistant" describes handling and fingering as being done "frequently," not "occasionally." Dep't of Labor, DOT § 079.361-018, 1996 WL 646851 (1991).

*Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Conflicts are "apparent" if they are "obvious enough that the ALJ should have picked up on them without any assistance." *Id.*

The question whether there is an apparent conflict between the RFC limiting Barth from exposure to pulmonary irritants and the DOT entry stating that a dental assistant must work with sanitizers and x-ray developing solutions joins forces with Barth's argument that given her *pro se* status at the hearing, the VE had a heightened duty to explore the facts relevant to the conflict. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). An unrepresented claimant may demonstrate prejudice related to an ALJ's failure to fully develop the record "by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). The ALJ was obligated in light of Barth's *pro se* status "to ask questions that will elicit a full picture of the applicant's capacity for full-time gainful employment." *See Johnson v. Barnhart*, 449 F.3d 804, 807 (7th Cir. 2006). The government points out that the DOT entry for dental assistant does not list any environmental limitations. *See* Dep't of Labor, DOT § 079.361-018. But this court agrees with Barth that because she asserted that developing solutions in her former job made her wheeze, that should have made obvious to the ALJ that there was a conflict between the VE's testimony that a person with pulmonary restrictions can perform the dental assistant job and the DOT's description of that job, which includes the requirement of developing x-rays. Instead of probing Barth's testimony or exploring the facts

surrounding how exposure to x-ray developing solutions meshes with a restriction from exposure to pulmonary irritants, the ALJ steamrolled through Barth's testimony on that subject, talking over her and failing to circle back to get to the bottom of the issue after the VE testified. (A.R. 64.) Especially in light of Barth's lack of representation, the ALJ's reliance on the VE's testimony without further developing the record to resolve the apparent conflict suggested by Barth's testimony violated SSR 00-4p. *See Overman*, 546 F.3d at 464. Accordingly, the case must be remanded so that the ALJ can develop the record with regard to a dental assistant's on-the-job exposure to potential pulmonary irritants. Once that issue has been fleshed out factually, the ALJ must resolve any remaining apparent conflict between the DOT's description of the dental assistant position and the VE's testimony that a restriction from pulmonary irritants is consistent with the ability to work in that position.[2]

## B.    The Appeals Council's Decision

Barth also argues that a remand is warranted in this case because, she says, the Appeals Council committed an error of law in declining to review the ALJ's decision in light of the new evidence she supplied in the form of Dr. Bhargava's

---

[2]  It should be noted that toward the end of the VE's testimony Barth tried to challenge him on the classification of her past work, pointing out that she was a dental hygienist, not a dental assistant. (A.R. 68-69.) The VE insisted that there is no difference between the two under the DOT, even though there are separate DOT entries for those two jobs. *See* Dep't of Labor, DOT §§ 078.361-010, 079.361-018. Although in her brief Barth concedes that there is no relevant substantive difference between the two jobs for purposes of this review, (R. 12, Pl.'s Mem. at 9 n.4), the VE's failure to recognize that separate entries exist does not create confidence in the reliability of his opinion.

notes documenting objective evidence and a diagnosis of carpal tunnel syndrome. SSA regulations require the Appeals Council to consider supplemental evidence if it qualifies as "new and material": new, meaning it was not available to the claimant at the hearing, and "material" in that it presents a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered" by the ALJ. *See* 20 C.F.R. §§ 404.970(b), 416.1470; *Stepp*, 795 F.3d at 725 (internal quotation and citation omitted). But what neither party has addressed in the briefs is that this court's ability to review the Appeals Council's decision "is dependent on the grounds on which the Council declined to grant plenary review." *See Stepp*, 795 F.3d at 722. Specifically, if the Appeals Council reviewed the evidence and deemed it to be new and material but nevertheless concluded that the evidence does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence," the Appeals Council's discretionary decision not to engage in plenary review is not subject to review. *See id.*; *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). If, on the other hand, the Appeals Council reviewed the evidence and concluded that it did not qualify under the regulation as being "new and material," the court may assess whether the Council committed a legal error in applying the relevant regulation. *See Stepp*, 795 F.3d at 722; *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).

Unfortunately, divining the basis of the Appeals Council's decision not to review the ALJ's decision here—and accordingly whether this court has jurisdiction to resolve Barth's argument—is a task made difficult by the limited explanation the

Council provided. The Appeals Council wrote that it "looked at" the evidence Barth submitted, "considered whether the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence of record," and "found that this information does not provide a basis for changing the [ALJ]'s decision." (A.R. 6.) The latter language is standard boilerplate which the Seventh Circuit has described as being "not as clear as it might be." *Farrell*, 692 F.3d at 771. That is because "[o]n the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result." *Id.*

In a recent decision the Seventh Circuit described its precedent parsing this issue as presenting a "spectrum" of outcomes. *See Stepp*, 795 F.3d at 725. It characterized *Perkins* as falling at one end of the spectrum, and *Farrell* at the other. *Id.* In *Perkins*, the Appeals Council devoted a paragraph to evaluating the claimant's newly submitted evidence before concluding that it did not "provide a basis for changing the [ALJ]'s decision." 107 F.3d at 1294. The *Perkins* court concluded that because the Appeals Council expressly evaluated the content of the new records, it must have accepted that evidence as "new and material," and therefore its order denying review was a discretionary, unreviewable decision. *Id.* In *Farrell*, the court reached the opposite conclusion where the Appeals Council summarily denied the claimant's request for review using the same boilerplate it used here without identifying the new evidence by name. 692 F.3d at 771. The *Farrell* court concluded that without more specific language, the denial notice

16

should be interpreted to mean that the Council rejected the new evidence as "non-qualifying" under the regulation, and thus the court could review the "limited question" whether the Council had misapplied the regulation in deeming the evidence not "new and material." *Id.*

In *Stepp*, the Seventh Circuit was presented with another Appeals Council denial conveying the same boilerplate stating that the additional evidence did not present a basis to review the ALJ's decision, but there the Council's order listed the relevant evidence only in an exhibit list. 795 F.3d at 723-24. The Commissioner argued that the Council's inclusion of the relevant notes on the list of exhibits to the denial order showed that it had accepted the notes as new and material but that the new evidence did not justify reopening the decision. *Id.* The Commissioner also argued that the same language the Council used here, stating that it "considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence of record," makes clear that the Council found the newly submitted evidence to be qualifying under the regulation but insufficient to warrant a fresh review. *Id.* at 724. The Seventh Circuit rejected this interpretation of the order, finding that the boilerplate language was insufficiently specific to confirm that the Council had accepted and reviewed the new evidence, as was the order's inclusion of the evidence in an exhibit list. *Id.* at 724-25. In sum, the Seventh Circuit concluded that the "minimal information" and "abstruse signals" provided by the Appeals Council in its denial of Stepp's request for review "is insufficient to allow us to determine with any confidence" that it had accepted the additional evidence as new

and material.  *Id.* at 725.  The court therefore interpreted the denial order to mean that the Appeals Council rejected the evidence as non-qualifying and proceeded to review its determination that the newly submitted notes were not "new and material" within the meaning of 20 C.F.R. § 404.970(b).  *Id.*

This court concludes that the current case is more akin to *Farrell* and *Stepp* than it is to *Perkins*.  The Appeals Council here used the same boilerplate that the Seventh Circuit criticized in *Stepp* and *Farrell*, and although it identified the newly submitted notes from Dr. Bhargava by name in the body of its order as well as in the exhibit list, it did not provide any analysis or evaluation of that evidence before denying Barth's request for review.  (A.R. 6, 9-10.)  That minimal treatment leads this court to conclude that the Appeals Council rejected Dr. Bhargava's notes as non-qualifying under the regulation.  Accordingly, this court may review that finding for legal error.  *See Stepp*, 795 F.3d at 725.

Neither party makes any argument as to whether Dr. Bhargava's notes, which pre-date the ALJ's hearing, qualify as "new" within the meaning of the regulation.  Evidence is considered to be "new" in this context if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (quotation and citation omitted).  Here there can be no question that Dr. Bhargava's October 2010 notes were in existence at the relevant time because they pre-date the ALJ's hearing by over a year.  (A.R. 35, 374.)  A stickier question is whether the notes were "available" to Barth within the meaning of the regulation.  On the one hand, Barth gave permission in April 2011 for the Commissioner to

obtain all of the records from Marcotte Medical Group, which should have included Dr. Bhargava's October 2010 notes. (Id. at 333.) For some unknown reason his notes were not included among the records sent to the ALJ. Nevertheless, at the hearing, Barth referenced Dr. Bhargava's notes and appeared to be under the impression that they were among the records supplied to the ALJ:

| | |
|---|---|
| ALJ: | Okay, ma'am, the carpal tunnel syndrome, who diagnosed that? |
| Barth: | I never had the electrical tests for it, but I did go to [Marcotte] Medical and it wasn't my normal doctor, Christine [Marcotte], it was another—there's records in there of that. |
| ALJ: | Okay, and—okay, so you mean it was your primary doctor? |
| Barth: | One of her associates. |
| ALJ: | Okay, and when was it that you were diagnosed with carpal tunnel syndrome? |
| Barth: | In October, I think, or— |
| ALJ: | Of what year? |
| Barth: | 2010. |
| ALJ: | 2010? |
| Barth: | Yeah, Mm-hmm. |
| ALJ: | In your house do you dust? |

(Id. at 57-58.) From there the ALJ went on to explore Barth's hobbies, without asking Barth any additional questions to help identify which medical record Barth was referencing and whether those notes had been included in the record evidence. Despite Barth's *pro se* status, the ALJ did nothing to probe into Barth's assertion that she had been diagnosed with carpal tunnel syndrome or to ensure that the relevant notes were among the record in front of her. *See Nelms*, 553 F.3d at 1098 (noting ALJ's duty to request additional records "as necessary" when claimant is unrepresented). That lapse begs the question whether evidence is "available" to an

unrepresented claimant who identifies the evidence during her hearing and indicates that she believes the evidence to be part of the record, but where that belief is mistaken and completely unexplored by the ALJ.

On the other hand, this court is unable to overlook the fact that despite now being represented by counsel, in her briefs to this court Barth does nothing to address the issue of whether Dr. Bhargava's notes can be considered "new" within the meaning of the relevant regulation. Barth acknowledges that evidence qualifies as new only if it was not in existence or was unavailable at the time of the hearing, but develops no argument to explain why Dr. Bhargava's notes meet that test. (R. 12, Pl.'s Mem. at 10.) Instead, she skips straight to (persuasively) arguing that the notes are material.[3] But the notes must also be "new" to qualify under the regulation, and Barth has not explained why the Appeals Council committed a legal error in finding that the notes do not qualify. By failing to develop any argument regarding the newness of the evidence, Barth has waived the issue. *See Wicinski v. Colvin*, No. 12 CV 6242, 2013 WL 4495657, at *9 (N.D. Ill. Aug. 19, 2013). Although this court believes that it is at least arguable in the specific circumstances of this

---

[3] As Barth points out, the ALJ specifically discredited her complaints related to carpal tunnel syndrome based on her finding that there was "no evidence of an actual prior diagnosis" and no relevant limitations because the consulting examiner found no reduction in her range of motion in her wrists and normal grip strength. (A.R. 25.) But Dr. Bhargava's notes not only fill in the evidentiary gap by demonstrating that she had been diagnosed with carpal tunnel syndrome as early as October 2010, but he observed a decreased range of motion in her wrists and positive Phalen's sign. (Id. at 374.) Given that his notes contradict the evidence that the ALJ relied on to justify omitting any limitations related to carpal tunnel syndrome from Barth's RFC, there is at least a "reasonable probability" that the ALJ would have changed her decision had she considered that evidence.

case that the regulation should be interpreted to mean that Dr. Bhargava's records were unavailable to Barth, the court will not leap to that interpretation where the claimant herself has ignored the issue. *Cf. Williams v. Colvin*, No. 14 CV 5075, 2015 WL 5227736, at *9 (N.D. Ill. Sept. 4, 2015) (noting that whether evidence is "new" and whether claimant had good cause for not producing it earlier are distinct questions). Accordingly, Barth has not shown that the Appeals Council erred in deeming Dr. Bhargava's notes to be non-qualifying under 20 C.F.R. §§ 404.970(b), 416.1470.

## Conclusion

For the foregoing reasons, Barth's motion for summary judgment is granted and the Commissioner's is denied. The case is remanded for further proceedings consistent with this opinion.

**ENTER:**

Young B. Kim
United States Magistrate Judge